UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY ROGERS,<br><br>                Plaintiff,<br><br>v.<br><br>THOMAS W. HARKER, SECRETARY OF THE NAVY (Acting),<br><br>                Defendant. | Case No.: 19cv2391 JM (AHG)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant Thomas W. Harker,[1] Acting Secretary of the Navy, moves for summary judgment on Plaintiff's sexual harassment claim. (Doc. No. 34.) Plaintiff Ashley Rogers opposes. (Doc. No. 35.) The motion has been briefed and the court finds it suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the below reasons, Defendant's motion is **DENIED**.

**I.    BACKGROUND**

Beginning in October 2016, the Department of the Navy employed Plaintiff as a barista at a Starbucks located on Naval Base Coronado. Loren Demars was Plaintiff's

---

[1] The case was originally brought against Richard V. Spencer, Secretary of the Department of the Navy.

1

supervisor. As a new employee, Plaintiff signed a form stating "[i]f you believe that you have been the victim of unlawful discrimination on the basis of . . . . sex . . . . you must contact an Equal Employment Opportunity (EEO) counselor within 45 calendar days of the alleged discriminatory action." (Doc. No. 34-1 at 9.)

Between January 2017 and June 2018, Plaintiff alleges she was sexually harassed by Demars because he made comments about her appearance and clothing, referred to her as a "ho," propositioned her to "make out" in his office, and, on June 20, 2018, put his hand in her back pocket. On July 12, 2018, Plaintiff contacted an EEO counselor. On October 25, 2018, Plaintiff filed a formal complaint. On February 7, 2020, Plaintiff filed the operative complaint, which includes one claim for sexual harassment and one claim for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16(a). (Doc. No. 9.) Defendant does not move for summary judgment on Plaintiff's retaliation claim.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As a matter of law" essentially means "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A moving party without the ultimate burden of persuasion at trial, usually a defendant, has both the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In deciding a motion for summary judgment, the court must examine the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court may not weigh evidence or make credibility determinations. *Berg v. Kincheloe*,

794 F.2d 457, 459 (9th Cir. 1986).  Any doubt as to the existence of any issue of material fact requires denial of the motion.  *Anderson*, 477 U.S. at 255.

### III.  DISCUSSION

Civilian employees in the federal sector "who believe they have been discriminated against on the basis of . . . . sex . . . . must consult a counselor prior to filing a complaint in order to try to informally resolve the matter."  29 C.F.R. § 1614.105(a).  The "aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory[.]"  *Id.* § 1614.105(a)(1).  The 45-day time period is treated as a statute of limitations.  *Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416 (9th Cir. 1994).  Failure to comply with the 45-day contact requirement is "fatal to a federal employee's discrimination claim.  *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002).

Defendant argues "of the five acts of alleged sexual harassment identified by Plaintiff, four are time barred because Plaintiff did not contact an EEO counselor within 45 calendar days of each of those acts." (Doc. No. 34 at 2.)  In support of this argument, Defendant points to Plaintiff's deposition testimony that: (1) in January 2017, Demars said, "You're not wearing makeup.  You look a mess;" (2) starting in March 2017, he referred to her as the "ho of Starbucks;" (3) in April or May of 2018, when she was wearing a Padres shirt, he said, "You should wear that shirt more often.  I can see down it;" (4) sometime "probably maybe" in 2018, he asked her to come into his new office and said, "Close the door.  We can make out;" and (5) in June 2018, he said "I know that's not a wallet in your back pocket" and then put his hand inside her back pocket. (Doc. No. 34-1 (Exhibit 6).)  The parties agree the 45-day time period began on May 28, 2018 because Plaintiff contacted an EEO counselor on July 11, 2018.  Defendant therefore does not dispute that the June 2018 back pocket incident fell within the 45-day time period.  Defendant nonetheless argues it is entitled to summary judgment as to acts of alleged harassment that occurred prior to May 28, 2018. (Doc. No. 34 at 2.)  In response, Plaintiff argues, inter

alia, that acts that occurred prior to May 28, 2018 are not untimely because of the continuing violation doctrine.[2]

### A. Continuing Violation Doctrine

Plaintiff argues that no alleged act of sexual harassment is time barred under the continuing violation doctrine because at least one of the acts, i.e. the back pocket incident, fell within the 45-day time period. (Doc. No. 35 at 9.) In support of this argument, Plaintiff relies on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("*Morgan*"), in which the Supreme Court held "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." The statute at issue in *Morgan* required non-federal employees to file a charge of discrimination within 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). In reaching its decision, the *Morgan* Court distinguished between hostile work environment claims and claims involving "discrete acts of discrimination or retaliation." 536 U.S. at 105.

With respect to racial discrimination and retaliation claims, the Court explained, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"

---

[2] In her opposition, Plaintiff also relies on e-mails between her and a human resources assistant to show that Plaintiff reported Demars' harassment to HR (but not the EEO counselor) in June of 2017. (*See* Doc. No. 35 at 5.) Defendant objects and moves to exclude the e-mails because they were not provided during discovery. (Doc. No. 36-1.) Counsel for Plaintiff admit they unknowingly possessed the e-mails and inadvertently failed to produce them. (Doc. No. 38 at 2.) Because the court's decision with respect to summary judgment in no way depends on the e-mails, Defendant's objection is OVERRULED AS MOOT and her motion to exclude the e-mails is DENIED without prejudice. If necessary, Defendant may renew the objection or motion at a later date.

*Id.* at 114. The Court therefore held that plaintiffs can "only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Id*. With respect to hostile work environment claims, however, the Court explained:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts. . . . It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 115, 117 (internal citations omitted). The Court further explained, "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120.

The Ninth Circuit subsequently applied *Morgan* in deciding whether acts of alleged sexual harassment that occurred prior to the 180 or 300-day statutory deadline are time barred. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005).[3] The court held that, in order to determine whether events used to support a sexual harassment claim constitute one unlawful employment practice, courts consider (1) whether the "events" were "sufficiently severe or pervasive," and (2) "whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers." *Id.* at 893 (citing *Morgan*, 536 U.S. at 116, 120)

---

[3] In *Morgan*, the Court noted "[h]ostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." 536 U.S. at 116 n.10; *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004) ("[T]he elements to prove a hostile work environment are the same for both racial harassment and sexual harassment.").

(citations and internal quotation marks omitted). Under *Morgan* and *Porter*, Plaintiff is not prohibited, at this stage in the litigation, from presenting evidence at trial of the alleged acts of sexual harassment that occurred prior to May 28, 2018.[4]

### 1. Severe or Pervasive

In *Porter*, the plaintiff, a female corrections officer, alleged that prior to the statutory timeline: (1) a superior employee propositioned and pressured her to travel to Reno with him, and said he "owned her" and "nobody walks away from me;" (2) when the superior employee later became her supervisor, and after she reported him for sexual harassment, he ate some of her food and then spit in it; and (3) the union president repeatedly and explicitly sexually propositioned her, and after he was rebuffed, referred to her as a "whore." *Porter*, 419 F.3d at 888-89, 893. The plaintiff further alleged that at some unspecified point during the same year when the timeline began to run, the supervisor

---

[4] As noted above, *Morgan* and *Porter* involved a requirement under 42 U.S.C. § 2000e-5(e) to file an EEOC charge within 180 or 300 days "after the alleged unlawful employment practice occurred," while the instant suit involves a requirement under 29 C.F.R. § 1614.105(a)(1) to initiate contact with an EEO counselor within 45 days of "the date of the matter alleged to be discriminatory." Defendant does not attempt, however, to distinguish *Morgan* or *Porter* on this basis. Instead, Defendant relies on both cases in support of the instant motion. Despite the different language in 42 U.S.C. § 2000e-5(e), courts have applied *Morgan* with equal force to cases, like the instant one, involving 29 C.F.R. § 1614.105(a)(1), and the parties cite no case suggesting it should not apply with equal force. *See Mattioda v. Bridenstine*, Case No. 20-cv-03662-SVK, 2021 WL 75665, at *17 (N.D. Cal. Jan. 8, 2021) (relying on *Morgan* to deny motion to dismiss disability harassment claim for failure to contact EEO counselor within 45 days); *Shadoan v. Napolitano*, No. 10-CV-1796 JLS (DHB), 2012 WL 4547678, at *6 (S.D. Cal. Oct. 2, 2012) (denying summary judgment under *Morgan* because some of the events of a hostile work environment claim occurred within the 45-day time period). Although the parties did not brief on the issue, on its face, the "date of the matter alleged to be discriminatory" language in 29 C.F.R. § 1614.105(a)(1) appears to be just as suspectable to a continuing violation theory of harassment as the "after the unlawful employment practice occurred" language in 42 U.S.C. § 2000e-5(e), if not more so. *See Morgan*, 536 U.S. at 110 (rejecting argument that the term "practice" in the statute itself connotes an ongoing violation that can endure or recur over a period of time).

referred to her as a "bitch." *Id.* at 888, 893. Finally, the plaintiff alleged that within the statutory timeline: (1) the union president glared at her during an investigation; (2) unnamed co-workers yelled insults and obscenities at her when she demanded to see their identification; and (3) an assistant warden made "angry remarks" to her. *Id.* at 888-89, 893. The court found that, standing by themselves, the "angry remarks" by the warden and the insults from unnamed co-workers were not sufficiently severe or pervasive. *Id.* at 893. The court also found, however, "[m]uch of [the] alleged verbal and physical conduct was of an unwelcome sexual nature and, when taken together as a whole, . . . was sufficiently severe and pervasive to create an abusive work environment." *Id.* at 894.

Here, Demars' alleged conduct, i.e. commenting on Plaintiff's appearance in a sexual manner, calling her a "ho," telling her to close the door so they could make out, and ultimately touching her buttocks, is comparable to the conduct the court in *Porter* found to be sufficiently severe and pervasive, at least for the purpose of introducing evidence of the conduct at trial even though it occurred outside of the proscribed time period.[5] Moreover, Defendant did not argue in its motion that Demars' conduct was not severe or pervasive. Rather, Defendant argues in its reply that Demars' comments related to Plaintiff's make-up and looking "messy" are not severe or pervasive because "[w]hile Plaintiff may have been offended by being told she looked messy or was not wearing makeup, such feelings do not transform what are otherwise innocuous comments into 'severe or pervasive' conduct." (Doc. No. 36 at 7.) However, Defendant cites no case suggesting that Demars' particular comments were, as a matter of law, "innocuous" or should be considered in isolation from the remainder of Demars' comments and conduct. To the contrary, in sexual harassment claims, courts consider the totality of circumstances. *Meritor Sav. Bank, FSB*

---

[5] To state a sexual harassment hostile workplace claim, a plaintiff must show: (1) he or she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. *Vasquez*, 349 F.3d at 642.

*v. Vinson*, 477 U.S. 57, 69 (1986). The only case cited by Defendant is *Vasquez*, 349 F.3d 634, which did not involve sexual harassment. Also, in *Vasquez*, the court cited *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1105 (9th Cir. 1998), in which the court found that a supervisor's references to an employee's appearance, in addition to more sexually suggestive comments, could be considered as part of the employee's sexual harassment claim. Finally, there is a genuine dispute of fact as to whether Demars' reference to Plaintiff as a "ho" and his comments about her make-up and appearance occurred once or repeatedly, and if so, when the comments were made. (*See* Doc. No. 35 at 10 n.5.) The frequency and timing of Demars' comments are material to the severity or pervasiveness of the alleged harassment. Accordingly, the severity and pervasiveness of Demars' alleged conduct is sufficient, at this stage, to allow it to be heard at trial even if some of it occurred outside the 45-day time period.

### 2. Other Factors

As noted above, *Porter* also instructs courts to consider "whether the earlier and later events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" 419 F.3d at 893 (quoting *Morgan*, 536 U.S. at 116, 120). In *Porter*, the court found the "angry remarks" by the warden and the insults from unnamed co-workers were not connected to the other alleged events because they were not "sexually charged" and could have still been directed to the plaintiff if she was a man. *Id.* The court nonetheless found the "glaring" incident and "bitch" reference were sufficient to find a continuing violation. *Id.* at 894. The court reasoned that even though the conduct became less severe over the course of approximately three years, the events "involved the same type of sexist activity; to wit, intimidating or demeaning the value of female employees who do not submit to demands for sexual favors." *Id.* Accordingly, the court found the record was sufficient to support an inference the plaintiff was subjected to a sexually hostile work environment that carried over into the statutory time period and was therefore not time barred. *Id.*

Here, the pre-June 20, 2018 comments are part of the same actionable sexual harassment practice, especially when viewed in the light most favorable to Plaintiff. Certainly, a supervisor encouraging an employee to wear make-up, referring to her as a "ho," suggesting that she wear revealing clothing, telling her to close the door and propositioning her to "make out," and touching her buttocks are well within the range of behaviors potentially constituting unlawful sexual harassment.[6] All of the alleged pre-June 20, 2018 comments are sexually charged or demeaning to Plaintiff's appearance or value as an employee. Moreover, the back pocket incident, which indisputably occurred within the 45-day timeline, is arguably the most serious because it involved physical contact. Therefore, it is reasonable to infer, as Plaintiff argues, the alleged harassment was "escalating" and the back pocket incident was the "most daring" act that finally prompted Plaintiff to contact an EEO counselor.[7] It makes little sense that Plaintiff should only be allowed to present evidence of arguably the most serious timely act of harassment without reference to any of the prior acts leading up to it. *See Morgan*, 536 U.S. at 113 (plaintiffs may use untimely acts not only for the purpose of "assessing liability," but as "background

---

[6] Also, the proposition to "close the door" and "make out" in his office allegedly occurred sometime in 2018, and Plaintiff contacted an EEO counselor on July 12, 2018. In *Porter*, the Ninth Circuit inferred in the plaintiff's favor that a reference to the plaintiff as "bitch" could be considered as part of her harassment claim because it occurred "at some unspecified point that same year" when the plaintiff made her EEO complaint. 419 F.3d at 894. Accordingly, Plaintiff is entitled to an inference that the "close the door" and "make out" incident occurred after May 28, 2018, i.e. within the 45-day time period. Additionally, as noted above, there is a genuine dispute as to whether Demars' comments concerning Plaintiff's make-up and appearance, as well as his reference to her as a "ho," were repeated, and if so, whether they were repeated within the 45-day time period.

[7] The *Porter* court also noted that *Morgan* "does not call for the most egregious of the harassing events to occur within the [statutory time] period, nor does it demand that the harassing conduct continue to escalate over time in order for a hostile-environment claim to be actionable." 419 F.3d at 894. Here, however, the harassing conduct is alleged to have escalated over time, which only adds to the strength of Plaintiff's continuing violation argument.

evidence"). Additionally, all of the alleged acts of harassment occurred over a far shorter period of time (one year and eight months) than was the case in *Porter* (three years). *See also Medina v. Donahoe*, 854 F. Supp. 2d 733, 750 (N.D. Cal. 2012) (finding a continuing violation over the course of five years). Finally, Plaintiff's allegations involve one direct supervisor, whereas the allegations in *Porter* involved multiple superior employees and co-workers, only one of whom was temporarily a direct supervisor. *See also id.* (finding continuing violation in claim involving three supervisors).

Defendant argues the "I can see down your shirt" comment and proposition to "make out" were discreet acts under *Morgan* because (1) "Plaintiff herself distinguishes the comments at issue from the Padres shirt incident and invitation to make out by characterizing both as 'sexual advances' and 'separate' incidents," and (2) "[t]hese alleged incidents were not repeated on any other occasion and are the type of events that could be actionable on their own."[8] (Doc. No. 36 at 7-8.) In support of this argument, Defendant cites *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002), which did not involve a claim of sexual harassment under Title VII, but a claim by a business that it had been subjected to a pattern of hostile or harassing conduct by a municipality under 42 U.S.C. § 1983. In declining, in dicta, to analogize the business' claim to a Title VII claim, and therefore potentially apply the continuing violation doctrine from *Morgan*, the court noted the business' claims were based upon discrete acts, each of which was actionable on its own. *Id.* at 1061 n.13. Defendant cites no case supporting its argument, and it is not apparent as a matter of law, that any of the pre-June 20, 2018 comments were discreet acts or actionable on their own.[9]

---

[8] Defendant does not dispute that referring to Plaintiff as a "ho" can be included as part of Plaintiff's claim.

[9] In *Porter*, the Ninth Circuit found the following acts were discrete: (1) refusing to grant the plaintiff's requests for time off; (2) requiring her to be tested for tuberculosis by her own physician; (3) threatening disciplinary action while she was on medical leave; (4)

1    Defendant also cites *Soga v. Kleinhans*, No. 2:14-cv-01084-KJM-KJN, 2016 WL
2    4192411, at *7 (E.D. Cal. Aug. 9, 2016), in which the court found that multiple acts by a
3    supervisor were discrete, and did not support a claim for sexual harassment, because they
4    were not repeated or related.  However, the acts found to be discrete in *Soga* were in no
5    way sexual, but were disciplinary and related to work matters.  *See id.*  Here, the "I can see
6    down your shirt" comment and proposition to "make out" are sexual in nature and thus
7    related to the earlier comments about Plaintiff's appearance and calling her a "ho," as well
8    as to the incident where Demars allegedly touched Plaintiff's buttocks.  Accordingly, based
9    on the continuing violation doctrine and the arguments put forth by the parties, Plaintiff
10   should not be prevented, at the summary judgment stage, from introducing evidence at trial
11   of acts of sexual harassment that occurred prior to June 20, 2018.[10]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Doc. No. 34) is **DENIED**.

IT IS SO ORDERED.

DATED: May 25, 2021

JEFFREY T. MILLER
United States District Judge

---

leaving a negative performance evaluation in her personnel file; and (5) instructing her to enter the work site through the back gate.  *See* 419 F.3d at 893.  This discreet conduct is not "sexually charged" and is thus distinguishable from Demars' alleged conduct.

[10] Because the court finds Plaintiff's continuing violation argument dispositive of Defendant's motion for summary judgment, the court need not address Plaintiff's argument that the 45-day time period should be equitably tolled.